UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| EVE MARIE LAETTNER, | 16-CV-719-MJR |
| | DECISION AND ORDER |
| Plaintiff, | |
| -v- | |
| COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15).

Plaintiff Eve Marie Laettner brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Laettner's motion (Dkt. No. 9) is denied and the Commissioner's motion (Dkt. No. 10) is granted.

## BACKGROUND

On April 4, 2012, Laettner filed applications for DIB and SSI alleging disability since January 17, 2012 due to multiple sclerosis, which she was diagnosed with in 2005. (*See* Tr. 40-41, 63-64, 127-35, 156).[2] Born in 1981, Laettner was thirty-one-years old at the time of her applications. (Tr. 127). Before applying for benefits, she worked as a dental

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case.

biller, collection specialist, account executive, billing manager, data entry clerk, and retail clerk. (Tr. 162). She has not worked since her alleged onset date due to her impairment. (Tr. 39). Laettner's applications were denied on July 10, 2012 (Tr. 63-64, 73-88), after which she requested a hearing before an Administrative Law Judge (*see* Tr. 89). On July 29, 2013, Laettner, represented by counsel, appeared before Administrative Law Judge William M. Weir (the "ALJ") for a hearing. (Tr. 30-62). On March 19, 2015, the ALJ issued his decision denying Laettner's DIB and SSI claims. (Tr. 14-29). Laettner requested review by the Appeals Council (Tr. 13), but on July 12, 2016, the Appeals Council denied Laettner's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-7). This action followed.

## **DISCUSSION**

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1)*.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Laettner has not engaged in substantial gainful activity since January 17, 2012, her alleged onset date. (Tr. 19). At step two, the ALJ concluded that Laettner has the severe impairment of multiple sclerosis. (*Id.*). At step three, the ALJ found that Laettner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ found that Laettner has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a).[3] (*Id.*). Proceeding to step four, the ALJ found that Laettner is capable of performing her past relevant work as a dental billing clerk. (Tr. 24-25). Accordingly, without proceeding to step five, the ALJ found that Laettner has not been under a disability within the meaning of the Act from her January 17, 2012 onset date through the date of his decision. (Tr. 25).[4]

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§404.1567(a), 416.967(a).

[4] In addition, with regard to Laettner's DIB claim, the ALJ found Laettner's date last insured to be December 31, 2016. (Tr. 19).

IV. *Laettner's Challenges*

Laettner challenges the Commissioner's disability decision on two grounds: first, that the ALJ violated the "treating physician rule" by failing to give good reasons for rejecting the opinion of her treating physician, Dr. David Hojnacki, and second, that the ALJ misevaluated her credibility. (*See* Dkt. No. 9-1 (Laettner's Memo. of Law)). The Court will address each argument in turn.

A. *Treating Physician Rule*

Laettner argues that the ALJ violated the treating physician rule by failing to give good reasons for rejecting the opinion of her treating physician, Dr. Hojnacki, that she should stay off of work and not lift or carry any weight. (Tr. 285, 347, 356, 360, 377).

The treating physician rule requires an ALJ to give controlling weight to a treating source's medical opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the ALJ elects not to give a treating source's medical opinion controlling weight, he must consider certain factors to determine the weight to give the opinion, *id.* §§404.1527(c)(2), 416.927(c)(2), and "comprehensively set forth [his] reasons for the weight assigned to [the] opinion," *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (first alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The regulations state that the Commissioner "will always give good reasons" for the weight assigned to a treating source's medical opinion. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific." *Miller v. Colvin*, 122 F. Supp. 3d 23, 28 (W.D.N.Y. 2015) (internal

quotation marks and citations omitted). The ALJ should explain why he is not crediting a treating physician's opinion even where the opinion addresses an issue reserved to the Commissioner, namely, whether or not the claimant is disabled. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited.").

Here, the ALJ had good reasons for rejecting Dr. Hojnacki's opinion that Laettner is disabled and should not return to work. As noted by the ALJ in his decision, the opinion conflicts with Dr. Hojnacki's own treatment notes. (Tr. 24); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (upholding ALJ's decision to reject treating physician's opinion where the opinion was contrary to the physician's own treatment notes). In particular, Dr. Hojnacki's functional assessments in his treatment notes correspond to minimal disability (Tr. 285, 336, 345, 355, 375), and he actually issued his most restrictive assessment when Laettner was still working (Tr. 302). Moreover, when Laettner visited Dr. Hojnacki in May 2013, she reported "good tolerance" and "good symptom control" since restarting one of her medications, Tysabri, that she had previously stopped taking due to her pregnancy. (Tr. 284-85, 330).[5] Additionally, in rejecting Dr. Hojnacki's opinion, the ALJ correctly reasoned that whether or not Laettner is disabled and unable to work is an issue reserved to the Commissioner (Tr. 24), and the

---

[5] Laettner argues that MRIs taken in November 2013 and certain findings made by Dr. Hojnacki that same month support Dr. Hojnacki's opinion, but simply because there might be some evidence in the record supporting the opinion does not undermine the ALJ's decision to reject it. *See Monroe*, 676 F. App'x at 8 ("While [the treating physician's] medical source statement is supported by *some* evidence, the ALJ's decision to disregard his opinion is nevertheless substantially supported by the record.").

ALJ may "not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. §§404.1527(d), 416.927(d).

The ALJ also set forth good reasons for rejecting Dr. Hojnacki's opinion that she cannot lift or carry any weight. Although the ALJ did not expressly note this lifting and carrying restriction in his decision, he cited ample evidence contradicting it, such as Laettner's own statement that she can lift and carry up to fifteen pounds, Dr. J. Dale's opinion that she can lift up to twenty pounds, and Dr. Miller's opinion that she is only moderately limited with regard to repetitive heavy lifting and carrying. (Tr. 21-22). The amount of evidence contradicting Dr. Hojnacki's lifting and carrying restriction is a good reason for not crediting the restriction. 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4).

Accordingly, for these reasons, the ALJ's decision to reject Dr. Hojnacki's opinion that Laettner should stay off of work and not lift or carry any weight comports with the treating physician rule and is supported by substantial evidence. Having rejected Dr. Hojnacki's opinion, the ALJ appropriately relied on the opinions of Dr. Miller and Dr. Dale, the treatment notes, and Laettner's daily activities to conclude that Laettner retains the RFC to perform sedentary work. (Tr. 19-24); *see Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (summary order) ("[H]aving found a lack of evidence to support [the treating physician's] assessment, the ALJ was entitled to rely on statements by other physicians in the record . . . .").

### B. Credibility

Laettner also argues that the ALJ erred by not crediting her statements regarding the numbness, tingling, and pain in her hands, by allegedly ignoring her positive work history, by not crediting her statement regarding how stress affects her vision, and by

purportedly diminishing her credibility simply because of her pregnancy and status as a mother. The Court disagrees and finds that the ALJ's credibility determination is supported by substantial evidence and complies with the Commissioner's regulations. *See* 20 C.F.R. §§404.1529, 416.929; Social Security Ruling ("SSR") 96-7P, 1996 WL 374186 (July 2, 1996); SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017).

First, the ALJ correctly determined that Laettner's statements regarding numbness, tingling, and pain in her hands conflicts with other evidence in the record, such as Dr. Miller's opinion. (Tr. 21); *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[The ALJ] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."). Laettner cites other evidence that she believes supports her statements, but the relevant inquiry is not whether there is substantial evidence supporting Laettner's position, but rather whether substantial evidence supports the ALJ's conclusions. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). Dr. Miller's opinion provides that requisite support here.

Second, the ALJ appropriately considered Laettner's work history, finding that her ability to work for a period of time after she was diagnosed with multiple sclerosis undermines her allegations of total disability. (Tr. 20, 24). The ALJ acted well within his discretion in making this finding. *See Legg*, 574 F. App'x at 49-50.

Third, the ALJ appropriately declined to give any weight to Laettner's claim that stress affects her vision. The only evidence Laettner offers in support of this argument is her own subjective complaint from before her alleged onset date (Tr. 301), and evidence cited by the ALJ from after Laettner's alleged onset date shows normal vision (Tr. 24).

Fourth, the ALJ did not diminish Laettner's credibility simply because of her pregnancy and status as a mother. Although the ALJ did point out that Laettner was approximately three months pregnant when she stopped working (Tr. 23), the Court finds that he did so in the context of Laettner having to discontinue taking one of her medications, Tysabri, while pregnant (Tr. 20-21). Once Laettner had her child and resumed taking Tysabri, she experienced "good symptom control." (Tr. 22, 330). Nor did the ALJ diminish Laettner's credibility simply because she is a mother. Rather, the ALJ noted that Laettner performed certain childcare activities — such as lifting her twenty-pound baby into a crib — that support an RFC of sedentary work. (Tr. 24). Laettner's ability to perform childcare activities is relevant in assessing her credibility. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that plaintiff's ability to care for his one-year-old child, including changing diapers, weighed against his complaints of disabling pain). Accordingly, for these reasons, Laettner's objections to the ALJ's credibility determination are without merit.

## **CONCLUSION**

For the foregoing reasons, Laettner's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   July 20, 2018
         Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge